**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **O'REILLY AUTOMOTIVE STORES, INC.,** | ) | |
| | ) | |
| | ) | **CIVIL ACTION** |
| **Plaintiff,** | ) | **FILE NO. _____** |
| **vs.** | ) | |
| | ) | |
| **BRANCH-DOUGLASVILLE, LLC** | ) | |
| **PIEDMONT LAND** | ) | |
| **DEVELOPMENT, INC., and** | ) | |
| **EQUITY RESOURCE** | ) | |
| **PARTNERS-BRANCH, LLC** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## VERIFIED COMPLAINT FOR DAMAGES AND SPECIFIC PERFORMANCE

**COMES NOW O'REILLY AUTOMOTIVE STORES, INC.** ("Plaintiff" or "O'Reilly"), Plaintiff hereinabove, and, by and through its counsel of record, files this Verified Complaint for Damages and Specific Performance and states as follows:

### Nature of this Action

This Complaint seeks damages for breach of contract, fraud, specific performance, and for expenses of litigation under O.C.G.A. § 13-6-11. Plaintiff seeks to enforce its rights under the Build-To-Suit Lease ("Lease") entered into with Branch-Douglasville, LLC, a Georgia limited liability company concerning property located in the City of Douglasville, Douglas County, Georgia.

31128338v1

## Parties, Jurisdiction and Venue

1.

Plaintiff is a corporation incorporated under the laws of the State of Missouri with its principal office located at 233 S. Patterson Avenue, Springfield, Greene County, Missouri 65801. Plaintiff is authorized to conduct business in Georgia.

2.

Plaintiff is a citizen, resident, and domicile of the State of Missouri.

3.

Plaintiff is a not citizen, resident, and domicile of the State of Georgia.

4.

Plaintiff is a not citizen, resident, and domicile of the State of North Carolina.

5.

Defendant Branch-Douglasville, LLC ("Branch-Douglasville") is a limited liability company organized under the laws of the State of Georgia with its principal office located at 80 West Wieuca Road, N.E., Suite 204, Atlanta, Fulton County, Georgia 30342. Alternatively, Branch-Douglasville has its principal office located at 568 Jetton Street, Suite 200, Davidson, Mecklenburg County, North Carolina 28036.

- 2 -

6.

Branch-Douglasville is a citizen, resident, and domicile of either the State of Georgia or the State of North Carolina.

7.

Branch-Douglasville is not a citizen, resident, and domicile of the State of Missouri.

8.

Equity Resource Partners-Branch, LLC ("Equity"), is a limited liability company organized under the laws of the State of Georgia with its principal office located at 80 West Wieuca Road, N.E., Suite 204, Atlanta, Fulton County, Georgia 30342.

9.

Equity is a citizen, resident, and domicile of either the State of Georgia or the State of North Carolina.

10.

Equity is not a citizen, resident, and domicile of the State of Missouri.

11.

Defendant Piedmont Land Development, Inc. ("Piedmont") is a limited liability company organized under the laws of the State of North Carolina with its

31128338v1

principal office located at 568 Jetton Street, Suite 200, Davidson, Mecklenburg County, North Carolina 28036.

12.

Piedmont is the manager and/or managing member of Branch-Douglasville and/or Equity.

13.

Piedmont is a citizen, resident, and domicile of either the State of North Carolina.

14.

Piedmont is not a citizen, resident, and domicile of the State of Missouri.

15.

Upon information and belief, Branch-Douglasville and/or Equity and/or Piedmont has as one of its member, Ronald Larry Turner, Jr. ("Turner"), who resides at 240 Pine Road, Davidson, Mecklenburg County, North Carolina 28036.

16.

Turner is a citizen, resident, and domicile of the State of North Carolina.

17.

Turner is not a citizen, resident, and domicile of the State of Missouri.

- 4 -

18.

Upon information and belief, Branch-Douglasville and/or Equity and/or Piedmont has as one of its member, Drew Johnson ("Johnson"), who resides in Georgia.

19.

Johnson is a citizen, resident, and domicile of the State of Georgia.

20.

Johnson is not a citizen, resident, and domicile of the State of Missouri.

21.

Upon information and belief, Branch-Douglasville and/or Equity and/or Piedmont has as one of its member, Asa Griggs Candler VII ("Candler"), who resides in Georgia.

22.

Candler is a citizen, resident, and domicile of the State of Georgia.

23.

Candler is not a citizen, resident, and domicile of the State of Missouri.

24.

Upon information and belief, Branch-Douglasville and/or Equity and/or Piedmont has as one of its member, Matt Lowe ("Lowe"), who resides in Georgia.

31128338v1

25.

Lowe is a citizen, resident, and domicile of the State of Georgia.

26.

Lowe is not a citizen, resident, and domicile of the State of Missouri.

27.

Upon information and belief, Branch-Douglasville and/or Equity and/or Piedmont has as one of its member, Cole Wooddall ("CWooodall"), who resides in Georgia.

28.

CWooodall is a citizen, resident, and domicile of the State of Georgia.

29.

CWoodall is not a citizen, resident, and domicile of the State of Missouri.

30.

Upon information and belief, Branch-Douglasville and/or Equity and/or Piedmont has as one of its member, Christian Turner ("CTurner"), who resides in North Carolina.

31.

CTurner is a citizen, resident, and domicile of the State of Georgia.

32.

CTurner is not a citizen, resident, and domicile of the State of Missouri.

33.

Upon information and belief, Branch-Douglasville and/or Equity and/or Piedmont has as one of its member, Brian Peace ("Peace"), who resides in North Carolina.

34.

Peace is a citizen, resident, and domicile of the State of North Carolina.

35.

Peace is not a citizen, resident, and domicile of the State of Missouri.

36.

Upon information and belief, Branch-Douglasville and/or Piedmont has as one of its member, Jeff Watson ("Watson"), who resides in North Carolina.

37.

Watson is a citizen, resident, and domicile of the State of North Carolina.

38.

Watson is not a citizen, resident, and domicile of the State of Missouri.

39.

Branch-Douglasville may be served by serving its registered agent, Charles Lee

31128338v1

Wooddall, at Branch-Douglasville, LLC, 80 West Wieuca Road, N.E., Suite 204, Atlanta, Fulton County, Georgia, 30342.

40.

Defendant Piedmont is a North Carolina limited liability company with its Georgia registered agent, Charles Lee Wooddall, located at its registered office 80 West Wieuca Road, N.E., Suite 204, Atlanta, Fulton County, Georgia 30342.

41.

Piedmont may be served by serving its registered agent with process at its registered address in Georgia.

42.

Equity may be served by serving its registered agent, Charles Lee Wooddall, at Branch-Douglasville, LLC, 80 West Wieuca Road, N.E., Suite 204, Atlanta, Fulton County, Georgia, 30342.

43.

Equity may be served by serving its registered agent with process at its registered address in Georgia.

44.

The Plaintiff and the Defendants are from diverse states.

45.

In 2021, O'Reilly had revenue of $307 per square foot of retail space.

46.

Under the Lease, the new retail store was supposed to have 7,225 square feet.

47.

Using an annual-revenue-per-square-foot metric, the average annual revenue for this retail store would have been $2,218,075 ((7,225 sq. ft.) x ($307 per sq. ft)).

48.

Based upon 2021 net-operating-profit margin of 21.9%, the annualized damages would be $485,758.43.

49.

The parties signed the Lease on September 21, 2021.

50.

Based on the time tables in the Lease, construction should have started and been completed within approximately 270 days (approximately June 14, 2022).

51.

If Branch-Douglasville had performed under the Lease, the store should have been operational for about six months (if not more), which means that

- 9 -

O'Reilly would have had an estimated lost profit of $243,545.55 (183 days from June 13, 2022 to December 12, 2022).

52.

That is an estimated daily lost profit of $1,330.85.

53.

Even if one were to discount the damages for new store start-up, O'Reilly's estimated damages exceed $75,000.

54.

Plaintiff seeks damages in excess of $75,000 and other relief.

55.

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because this action is between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

56.

Under O.C.G.A. § 9-10-91, this Court has personal jurisdiction over all parties in this action because the parties entered into a contract in Georgia and in this Division and/or own property in Georgia and in this Division and/or committed a tort, individually or jointly, in Georgia and in this Division and/or otherwise regularly transact business in Georgia and in this Division.

31128338v1

57.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

58.

This Court is proper venue because Douglas County, Georgia is located in within the United States District Court for the Northern District of Georgia, Atlanta Division, under 28 U.S.C. § 90(a)(2).

## FACTS

### A. Background

59.

Plaintiff O'Reilly Automotive Stores, Inc. ("O'Reilly"), operates approximately 5,910 stores in 47 U.S. states.

60.

O'Reilly employs more than 84,000 team members.

61.

O'Reilly negotiated a Build-To-Suit Lease with Branch-Douglasville, LLC, purported owner and an affiliate of Equity Resource Partners-Branch, LLC, dated September 16, 2021 (the "Lease"), for the property located at 4005 Fielding Drive, Douglasville, Georgia 30135 (the "Property").

31128338v1

**B. The Lease**

62.

In Section 37.1, Branch-Douglasville, LLC, states that it is the owner of the Demised Premises. A true and correct copy of the Build to Own Lease is attached hereto as **Exhibit "A."**

63.

Pursuant to the Lease, Branch-Douglasville, LLC, as the Landlord covenanted and warranted that it is the owner of the Demised Premises, which is defined as Exhibit A thereto. *See* Lease Section 30.1.

64.

Pursuant to Exhibit "A" to the Lease, the Demised Premises are

EXHIBIT A

Description of the Property

All that tract or parcel of land lying and being in Land Lot 74 of the 1st District, 5th Section, Douglas County, Georgia, being shown as "Tract F 2.243 acres 97,714 SF 4005 Fielding Drive", as more particularly shown on that certain "Final Plat The Shoppes at Chapel Hill", dated December 21, 2006, prepared by Vansant- Campbell Land Planning, and bearing the certification and seal of Adam T. Pearson, Georgia R.L.S. No. 2993, which Final Plat is recorded in Plat Book 35, page 15, Douglas County, Georgia records, which plat is incorporated herein by reference.

31128338v1

65.

The "Effective Date" of this Lease shall be the last date established by affixing signatures (or initials) and date on this Lease. *See* Lease Section 34.16.

66.

Based on the dates by the signatures of the signatories, the Effective Date for the Lease was September 16, 2021, which was when Scott Kraus, Senior Vice President for O'Reilly had signed.

67.

Ron L. Turner, Jr., as President of Piedmont Land Development, Inc., which was Manager of Branch-Douglasville, signed the Lease on August 4, 2021.

68.

The Lease provides in Section 35, OWNERSHIP, Subsection 35.1, the following: "Landlord shall provide Tenant with written documentation (e.g., a copy of the deed vesting title in Landlord) of Landlord's Ownership of the subject property concurrently with Landlord's execution and delivery of this Lease."

69.

Branch-Douglasville failed to deliver this information in accordance with the terms of the Lease.

31128338v1

70.

The Lease provides in Section 2, CONSTRUCTION OF FACILITY BY LANDLORD, Subsection 2.1, the following:

> Landlord shall construct on the Demised Premises the Improvements including a 7,225 square foot building in accordance with the Work Letter and as shown on Exhibit A-I hereto. ***Landlord acknowledges the cost of such improvements, unless expressly stated otherwise herein, shall be at Landlord's sole cost and expense***.

(Emphasis added).

71.

Under the Lease, Branch-Douglasville as Landlord agreed to bear the cost and expense of the construction of the improvements on the Demised Premises.

72.

The Lease provides in Section 16, LANDLORD REPRESENTATIONS AND WARRANTIES, Subsection 16.1 the following: "Landlord represents that it has fee title to the Demised Premises matters of title disclosed in the Landlord's title policy attached as Exhibit F."

73.

Subsection 16.1 of the Lease refers to Exhibit "F" to the Lease, which reads "LANDLORD'S TITLE POLICY . . . To be provided and inserted by Landlord."

- 14 -

74.

Branch-Douglasville has not provided the terms for Exhibit F" to the Lease.

75.

The Lease provides in Section 32, RIGHT OF FIRST REFUSAL, Subsection 32.1 the following:

Landlord hereby grants to Tenant the right of first refusal to purchase the Demised Premises. If during the initial term of the Lease, or during the term of any properly exercised extension option, Landlord shall receive from any party not a party to this Lease a bona fide offer that Landlord intends to accept, then within two (2) business days of the receipt by Landlord of such bona fide offer to purchase, Landlord shall deliver to Tenant written notice of all terms of such offer, together with true and accurate copies of any and all written offers, letters of intent or other ,written communications by which said offer was transmitted to Landlord. Tenant shall have ten (10) business days after receipt from the Landlord of such notice and offer documents to notify Landlord in writing of its intention to exercise the first right of refusal granted herein. Within ten (10) days after so notifying Landlord of such intent, the Landlord and Tenant shall execute a written contract for the sale of the Demised Premises by Landlord to Tenant, which written contract shall be prepared consistent with the material and substantive terms of such bona fide offer. If Tenant shall elect not to exercise the first right of refusal granted herein in the manner herein provided, then the first right of refusal shall lapse and terminate and Landlord shall be free to sell the Demised Premises to the offeror of such bona fide offer on the terms set forth in such bona fide offer, subject to this Lease and Tenant's rights as Tenant hereunder. If the Demised Premises do not sell to the offeror of such bona fide offer, this provision shall not be terminated and Tenant shall have the first right of refusal on any subsequent offers to purchase.

- 15 -

76.

Branch-Douglasville has not presented O'Reilly with an opportunity to exercise its right of first refusal.

77.

Although the Lease has a provision for Force Majeure, that has not occurred in this case. *See* Lease, Section 34.2.

78.

That Force Majeure provision of the Lease provides "nothing in this Section shall excuse the performance of any act rendered difficult or impossible solely because of the financial condition of the party required to perform the act." *See* Lease, Section 34.2.

**C. The Work Letter**

79.

The Lease incorporates a Work Letter as Exhibit "B" to the Lease. A true and correct copy of Exhibit "B" is attached hereto and incorporated herein as **Exhibit "B."**

80.

The Work Letter provides in Section 1.2, Landlord's Due Diligence, the following:

No later than thirty (30) days after the Effective Date of the Lease, Landlord shall deliver to Tenant, for its review and approval, a preliminary site plan based on Lease Exhibit A-1, a land survey based on Lease Exhibit B-1 (electronic copy signed and sealed) including confirmation of any plans (or lack thereof) for road or street improvement projects, medians to be constructed (current or future) or right-of-way takings that potentially affect access to the Demised Premises or the normal course of business operations of Tenant, an environmental report (Phase I) certified to Tenant and created within six (6) months of the Effective Date of the Lease, a geotechnical report (in accordance with Work Letter Exhibit B-3, and a title policy (collectively "Landlord's Due Diligence Items"). Tenant shall have thirty (30) days to approve Landlord's Due Diligence Items.

81.

Branch-Douglasville failed to deliver these items to O'Reilly within thirty (30) days.

82.

O'Reilly has demanded that Branch-Douglasville comply with its obligations to build the facility under the Lease. *See* a true and correct copy of the Letter from Carl H. Anderson, Jr., dated August 3, 2022, which is attached hereto and incorporated herein as **Exhibit "C"**.

83.

**D. The Memorandum of Lease**

84.

The Memorandum of Lease ("Memorandum") is Exhibit "I" to the Lease. A

- 17 -

true and correct copy of the Memorandum of Lease is attached hereto and incorporated herein as **Exhibit "D".**

85.

Ron L. Turner, Jr., as President of Piedmont Land Development, Inc., which was Manager of Branch-Douglasville, signed the Memorandum on August 4, 2021.

86.

Scott Kraus, Senior Vice President for O'Reilly signed the Memorandum on September 16, 2021.

### E. Post-Lease Execution Developments

87.

O'Reilly has not terminated the Lease under its provisions.

88.

Branch-Douglasville has not terminated the Lease under its provisions.

89.

O'Reilly stands ready, willing, and able to perform its obligations under the Lease.

90.

O'Reilly has demanded performance of the Lease under its provisions and those of the incorporated exhibits.

- 18 -

91.

To protect its interests in the Demised Property under the Lease, O'Reilly caused an Affidavit under O.C.G.A. § 44-2-20 to be filed in the deed records of the Clerk of the Superior Court of Douglas County, Georgia, on or about July 28, 2022. A true and correct copy of the O.C.G.A. § 44-2-20 Affidavit is attached hereto and incorporated herein as **Exhibit "E."**

92.

O'Reilly's counsel sent Branch-Douglasville and Equity and their representatives a letter dated August 3, 2022 as their Notice of Filing Affidavit. *See* **Exhibit "C".**

93.

Branch-Douglasville responded on August 15, 2022 by letter from Henry Pharr, III, Esq. with the firm of Kirk Palmer & Thigpen, P.A., announcing Branch-Douglasville's intent to terminate the Lease at a future date for "impossibility and/or impracticability." A true and correct copy of such letter is attached hereto and incorporated herein as **Exhibit "F".**

94.

In the August 15, 2022 Letter, Branch-Douglasville wrote that cited "[i]n addition to rapidly increasing construction prices, Landlord [Branch-Douglasville]

is unable to finance the construction and development of the Improvements on the property under the current Lease terms."

95.

The basis for Branch-Douglasville's alleged termination was its financial condition.

96.

Under the Lease, Branch-Douglasville's financial condition is not a basis for termination.

97.

The basis for Branch-Douglasville's alleged termination was impracticability.

98.

Under the Lease, Branch-Douglasville's alleged impracticability is not a basis for termination.

99.

The basis for Branch-Douglasville's alleged termination was impossibility.

100.

Under the Lease, Branch-Douglasville's alleged impossibility is not a basis for termination.

- 20 -

101.

On October 6, 2022, Branch-Douglasville sent a letter from Henry Pharr, III, Esq. with the firm of Kirk Palmer & Thigpen, P.A., to O'Reilly and its counsel.[1] A true and correct copy of such letter is attached hereto and incorporated herein as **Exhibit "G"**.

102.

The October 6, 2022, Letter said that it was "[t]enant's official written notice of the termination of the Lease, effective September 1, 2022, as a result of impossibility and/or impracticability to perform under the terms of the Lease Agreement…".

103.

Under the Lease, Branch-Douglasville's alleged impracticability is not a basis for termination.

104.

The basis for Branch-Douglasville's alleged termination was impracticability.

---

[1] The October 6, 2022 Letter was misaddressed to Carl H. Henderson, Jr., Esq., instead of Carl H. Anderson, Jr. The corresponding e-mail address was also incorrect. The e-mail address was chenderson@hpylaw.com instead of canderson@hpylaw.com.

- 21 -

105.

Under the Lease, Branch-Douglasville's alleged impossibility is not a basis for termination.

106.

The basis for Branch-Douglasville's alleged termination was impossibility.

107.

On October 10, 2022, Branch-Douglasville wrote a second letter from Henry Pharr, III, Esq., to O'Reilly and its counsel.[2] A true and correct copy of such letter is attached hereto and incorporated herein as **Exhibit "H"**.

108.

The October 10, 2022, Letter said that it was "[t]enant's official written notice of the termination of the Lease, effective September 1, 2022, as a result of impossibility and/or impracticability to perform under the terms of the Lease Agreement…".

109.

Under the Lease, Branch-Douglasville's alleged impracticability is not a basis for termination.

---

[2] The October 10, 2022 Letter was misaddressed to Carl H. Henderson, Jr., Esq., instead of Carl H. Anderson, Jr. The corresponding e-mail address was also incorrect. The e-mail address was chenderson@hpylaw.com instead of canderson@hpylaw.com.

- 22 -

110.

The basis for Branch-Douglasville's alleged termination was impracticability.

111.

Under the Lease, Branch-Douglasville's alleged impossibility is not a basis for termination.

112.

The basis for Branch-Douglasville's alleged termination was impossibility.

113.

O'Reilly was not aware of any alleged impossibility when the parties entered into the Lease.

114.

O'Reilly was not aware of any alleged impracticability when the parties entered into the Lease.

115.

O'Reilly has performed all conditions under the Lease and associated documents that it is supposed to perform as of this date.

116.

Branch-Douglasville has not performed all conditions under the Lease and

31128338v1

associated documents that it is supposed to perform as of this date.

## Count I – BREACH OF CONTRACT

117.

Plaintiff re-alleges, re-asserts, and incorporates herein by reference the allegations of paragraphs 1 and 116 of this Complaint.

118.

The Lease entered into by the parties constitute a valid and enforceable contract.

119.

This Count is pled as an alternative.

120.

O'Reilly has fulfilled all of its obligations under the Lease.

121.

Branch-Douglasville has failed to perform the Lease.

122.

Branch-Douglasville's failure to perform the Lease by constructing the facility constitutes a breach of the Lease.

123.

As a result of Branch-Douglasville's breach, O'Reilly has been damaged.

- 24 -

124.

As a result of Branch-Douglasville's breach, O'Reilly is entitled to all damages owed under the Lease plus interest, its attorney's fees, costs and other expenses associated with Branch-Douglasville's breach.

## Count II – FRAUD AND FRAUD IN THE INDUCEMENT

125.

O'Reilly re-alleges, re-asserts, and incorporates herein by reference the allegations of paragraphs 1 and 124 of this Complaint.

126.

This Count is pled as an alternative.

127.

Defendants made false representations and promises that induced O'Reilly into entering into the Lease and expending resources in anticipation of the completion of the facility.

128.

Specifically, Defendants promised to lease and build the facility to O'Reilly as a retail store.

129.

Defendants falsely represented, assured, and communicated that they were

- 25 -

capable of the construction of the facility and delivery of the facility as a retail store in accordance with the Lease.

130.

Defendants falsely represented, assured, and communicated that the facility would be constructed and let to O'Reilly as a retail store.

131.

Defendants' material representations were knowingly false and fraudulent at the time they were made and Defendants never had any intention of fulfilling their obligations under the terms of the Lease.

132.

Defendants' material representations were knowingly false and fraudulent as they were not capable of fulfilling their obligations under the terms of the Lease.

133.

Defendants' representations and promises, as set forth herein, were materially and intentionally false.

134.

Defendants knew that the representations and promises, as set forth herein, were false at the time they were made.

135.

The facility that is the subject of the Lease has never been built and Defendants refuse to perform or provide any evidence that they actually intended to perform.

136.

In reliance on Defendants' representations, O'Reilly entered the Lease.

137.

In reliance on Defendants' representations, O'Reilly incurred associated costs and expenses.

138.

In reliance on Defendants' representations, O'Reilly lost other opportunities.

139.

O'Reilly performed substantial due diligence before entering into the Lease with Branch-Douglasville.

140.

Defendants are liable to O'Reilly for all damages flowing from their fraudulent conduct in inducing it to enter into the Lease and all other relief afforded by the law and this Court.

31128338v1

## Count III – SPECIFIC PERFORMANCE

### 141.

Plaintiff re-alleges, re-asserts, and incorporates herein by reference the allegations of paragraphs 1 and 140 of this Complaint.

### 142.

This Count is pled as an alternative.

### 143.

O'Reilly is, and at all times relevant hereto has been, ready, willing and able to perform all its obligations under the Lease and associated documents.

### 144.

The Demised Property is unique.

### 145.

O'Reilly has no adequate remedy at law for the Branch-Douglasville's breach of the Lease.

### 146.

The Lease is in writing. *See* **Exhibit "A".**

### 147.

Both parties signed the Lease. *See* **Exhibit "A".**

31128338v1

148.

The Lease is supported by adequate consideration. *See* **Exhibit "A".**

149.

The terms of the Lease are certain and unambiguous. *See* **Exhibit "A".**

150.

The terms of the Lease are capable of being performed by Branch-Douglasville. *See* **Exhibit "A".**

151.

Branch-Douglasville has failed to perform under the Lease.

152.

O'Reilly is entitled to specific performance of the Lease.

153.

It appears that Equity has failed to transfer the Demised Premises to its wholly-owned subsidiary, Branch-Douglasville, in accordance with the requirements of the Lease. *See* **Exhibit "A".**

154.

O'Reilly is entitled to a decree in its favor and against Defendants, requiring Equity to transfer the Demised Premises to Branch-Douglasville, requiring Branch-Douglasville to specifically perform its obligations under the Lease, and awarding

- 29 -

damages, together with interest, costs and such other relief as the Court deems proper.

## <u>Count IV – ATTORNEY'S FEES AND COSTS OF LITIGATION UNDER O.C.G.A. § 13-6-11</u>

155.

O'Reilly re-alleges, re-asserts, and incorporates herein by reference the allegations of paragraphs 1 and 154 of this Complaint.

156.

By refusing to acknowledge and perform under the Lease for which there is no bona fide dispute, Defendants have acted in bad faith, been stubbornly litigious, and has caused O'Reilly unnecessary trouble and expense.

157.

Accordingly, pursuant to O.C.G.A. § 13-6-11, O'Reilly is entitled to recover its expenses of litigation, including attorney's fees and costs.

158.

Pursuant to O.C.G.A. § 13-6-11, Defendants are obligated to pay or reimburse O'Reilly for all reasonable attorney's fees and costs of litigation incurred as a consequence of its actions.

31128338v1

## Count V – CONTRACTUAL ATTORNEY'S FEES AND COSTS OF LITIGATION

### 159.

O'Reilly re-alleges, re-asserts, and incorporates herein by reference the allegations of paragraphs 1 and 158 of this Complaint.

### 160.

The Lease provides in Subsection 34.8 the following:

Attorney Fees. If either party to this Lease commences litigation, legal action, or claim to protect its interest, or to enforce any term or provision of this Lease, the losing party in the dispute shall indemnify and hold harmless the prevailing party from any and all reasonable attorneys' fees and court costs incurred by the prevailing party.

### 161.

Separately, the Work Letter (Exhibit B to the Lease) provides in Section 6.5, Attorneys' Fees, the following: "[i]n any action to enforce or interpret the terms of this Work Letter, the party prevailing in that action shall be entitled to recover its reasonable attorneys' fees and costs of suit, both at trial and on appeal."

### 162.

Pursuant to the Lease and Work Letter, Defendants are obligated to pay or reimburse O'Reilly for all reasonable attorney's fees and costs of litigation incurred as a consequence of its actions if O'Reilly prevails.

- 31 -

## **Count VI – PUNITIVE DAMAGES**

### 163.

O'Reilly re-alleges, re-asserts, and incorporates herein by reference the allegations of paragraphs 1 and 162 of this Complaint.

### 164.

The Defendants' conduct has been fraudulent, willful, and with conscious indifference to the consequences so as to warrant the imposition of punitive damages so as to punish, penalize and/or deter the Defendants from similar conduct in the future.

### 165.

O'Reilly is entitled to an award of punitive damages based on Defendant's tortious conduct.

**WHEREFORE,** O'Reilly prays:

(a)  that the Court enter a decree of specific performance requiring that Equity transfer the Demised Premises to Branch-Douglasville;

(b)  that the Court enter a decree of specific performance requiring that Branch-Douglasville comply with the Lease and build the facility as envisioned thereunder;

- 32 -

(c)     alternatively, that the Court enter a judgment for damages in favor of O'Reilly and against Defendants in amount to be determined by a jury for breach of contract

(d)     alternatively, that the Court enter a judgment for damages in favor of O'Reilly and against Defendants in amount to be determined by a jury for their tortious conduct;

(e)     that the Court award pre-judgment interest as allowed by law;

(f)     that the Court award expenses of litigation, including reasonable attorney's fees pursuant to O.C.G.A. § 13-6-11 and all other applicable law;

(g)     that the Court award expenses of litigation, including reasonable attorney's fees pursuant to the Lease and/or the Work Letter;

(h)     alternatively, that the Court enter a judgment for punitive damages in favor of O'Reilly and against Defendants in amount to be determined by a jury for their tortious conduct;

(i)     for all such further relief as this Court may deem just and proper

Respectfully submitted, this 4th day of January, 2023.

                              **HAWKINS PARNELL & YOUNG LLP**


                              /s/ Carl H. Anderson, Jr.
                              Carl H. Anderson
                              Georgia Bar No. 016320

                              *Attorneys for Plaintiff*

303 Peachtree Street, NE
Suite 4000
Atlanta, Georgia  30308-3243
Telephone    (404) 614-7400
Facsimile    (855) 889-4588
E-mail:        canderson@hpylaw.com

31128338v1
*O'Reilly Automotive Stores, Inc. v. Branch-Douglasville, LLC et al.*
United States District Court, Northern District of Georgia, Atlanta Division
Civil Action File No._TBD

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

O'REILLY AUTOMOTIVE )
STORES, INC., )
)
           **Plaintiff,** )
vs. )
)
BRANCH-DOUGLASVILLE, LLC )
PIEDMONT LAND )
DEVELOPMENT,INC., and )
EQUITY RESOURCE )
PARTNERS-BRANCH, LLC )
)
           **Defendants.** )
_____ )

**CIVIL ACTION
FILE NO. _____**

## VERIFICATION OF O'REILLY AUTOMOTIVE STORES, INC.

STATE OF MISSOURI )
              ) SS:
COUNTY OF GREENE )

Before the undersigned officer duly authorized to administer oaths comes

Plaintiff **O'REILLY AUTOMOTIVE STORES, INC.,** through its

representative, who, after being duly sworn, states that he is PHIL HOPPER, that

he is the Senior Vice President of Plaintiff, that he has reviewed the foregoing

**COMPLAINT FOR DAMAGES AND SPECIFIC PERFORMANCE,** that he

is authorized to make this Verification on behalf of Plaintiff and, having relied on

- 1 -

31147222v1

the assistance of others in preparing this Complaint, hereby does verify on behalf

of the corporate entity that the within and foregoing is true and correct to the best

of his personal knowledge, information, and belief.

**O'REILLY AUTOMOTIVE STORES, INC.**

PHIL HOPPER
Title:  Senior Vice President

Signed and sworn to before me
this  $3rd$  day of December, 2022.
January, 2023

Notary Public

My Commission:  $6/21/2024$

NICOLE BULLARD
Notary Public – Notary Seal
STATE OF MISSOURI
Polk County
My Commission Expires June 21, 2024
Commission #20123761

- 2 -